UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE JACKSON<br><br>                Plaintiff,<br>   v.<br>UNITED STATES OF AMERICA, et al.<br><br>                Defendants.<br>                                                      / | No. C 05-3006 MHP<br>No. C 06-6490 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: Defendants' Motion for Summary Judgment** |

      Plaintiff Lawrence Jackson ("Jackson") brought this medical malpractice action under the Federal Tort Claims Act ("FTCA") against defendants United States of America, Veterans Administration, and Department of Veterans Affairs. 28 U.S.C. §§ 1346(b)(1), 2671 et seq. He asserts two causes of action arising out of surgery to remove his thyroid performed in July 2003 at the San Francisco VA Medical Center. The first cause of action is based on the surgeons' negligence in performing the surgery and the second cause of action is based on the surgeons' negligence in failing to disclose the risks of the surgery so that plaintiff could give valid informed consent. Now before the court is defendants' motion for summary judgment on both causes of action. Having considered the parties' submissions and arguments, the court enters the following memorandum and order.

BACKGROUND

      Plaintiff Lawrence Jackson has a long history of thyroid problems. At age three, he had a "knot" in his neck and received thyroid radiation therapy. Dedo Dec. ¶ 6. In 1975 Mr. Jackson had a bilateral partial thyroidectomy at Alta Bates Hospital in which more than half of his thyroid was

1 removed. Id. In 1991 Mr. Jackson underwent a needle biopsy at Kaiser Hospital to determine
2 whether a nodule in his thyroid gland was benign or malignant. Id., ¶ 7. In January 1997 he went to
3 the VA Clinic in Oakland as a new patient complaining of thyroid problems. Id., ¶ 8. VA doctors
4 followed Mr. Jackson's case throughout the late 1990s and early 2000s, and by May 2001, the
5 doctors noted a large bilateral symmetrical goiter that thyroid medication had failed to suppress. Mr.
6 Jackson underwent a total thyroidectomy on July 23, 2003. The procedure was performed by the
7 lead surgeon Dr. Quan-Yang Duh who was assisted by Dr. Michelle Li. Following the surgery, Mr.
8 Jackson's vocal cords were paralyzed and consequently, he now has a permanent tracheotomy.

LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. Id.; Gasaway v. Nw. Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994). The court may not make credibility determinations, and inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991); Anderson, 477 U.S. at 249.

The moving party may "move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." Fed. R. Civ. P. 56(a). "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).

DISCUSSION

I.     Negligence in Performing the Surgery

Mr. Jackson asserts a claim for medical malpractice under the FTCA. Liability under the FTCA is premised upon "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Mr Jackson's surgery was performed in the VA Medical Center in San Francisco, and accordingly, liability in this case is based on California law. The elements of a negligence cause of action under California law are: (1) a duty to use such skill, prudence, and diligence as other members of the relevant profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage. Hanson v. Grode, 76 Cal. App. 4th 601, 606 (1999). Plaintiff must prove each element by a preponderance of the evidence. Management Activities, Inc. v. United States, 21 F. Supp. 2d 1157, 1174 (C.D. Cal. 1998). Because the standards of care, diligence, prudence and skill for doctors are "peculiarly within the knowledge of experts," expert testimony is required to "prove or disprove that the defendant performed in accordance with the standard of care." Kelley v. Trunk, 66 Cal. App. 4th 519, 523 (1998); Sinz v. Owens, 33 Cal. 2d 749, 753 (1949). Although state law defines the substantive requirements for a prima facie showing of negligence, whether there is sufficient evidence to create a genuine issue of material fact is controlled by federal law. Fitzgerald v. Manning, 679 F.2d 341, 346 (4th Cir. 1982).

In opposition to defendants' motion for summary judgment, plaintiff submits evidence from three medical experts: (1) an undated one-paragraph "Certificate of Expert Review" from Dr. Robert

3

S. Zarranz, Pl.'s Opp., Exh. H; (2) the October 25, 2007 medical report of Dr. Murray Grossan, Pl.'s Opp., Exh. I; and (3) and the October 23, 2007 medical report of Dr. Harold A. Fenster, Pl.'s Opp., Exh. J. Defendants move to strike, for procedural deficiencies, the evidence submitted by Dr. Zarranz and Dr. Grossan. Moreover, defendants argue that the medical report of Dr. Fenster is substantively insufficient to create a genuine issue of material fact regarding a breach of the standard of care. The court will first address defendants' motion to strike for procedural deficiencies and will then address whether plaintiff has produced sufficient medical evidence to survive a motion for summary judgment.

### A. Motion to Strike Dr. Zarranz's and Dr. Grossan's Expert Opinions

Federal Rules of Civil Procedure 26(a)(2)(A) and (B) require a party to disclose the identity of an expert witness and to provide the expert's signed, written report containing "a complete statement of all opinions to be expressed and the basis and reasons therefor." A party "that without substantial justification fails to disclose" such expert witness information under Rule 26, "is not, unless such failure is harmless, permitted to use as evidence . . . on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). "[E]ven absent a showing in the record of bad faith or wilfulness, exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)." Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101 (9th Cir. 2001).

From early 2006 through July 2007, plaintiff's counsel Allan Tabor informed defendants' counsel Jonathan Lee that plaintiff's medical liability expert was Dr. Robert Zarranz. Lee Dec. ¶ 5. Sometime during 2006, Mr. Tabor provided a one paragraph statement from Dr. Zarranz which Mr. Tabor described as a "preliminary" expert report. Id. It is this preliminary report that plaintiff has sought to use as evidence to oppose this motion. During August and early September 2007, Mr. Lee made no less than three attempts to contact Mr. Tabor to schedule the deposition of Dr. Zarranz, but Mr. Tabor did not respond. Id., ¶ 6. Between September 11–12, 2007, Mr. Lee again contacted Mr. Tabor by telephone, facsimile and mail seeking his cooperation in obtaining the deposition of Dr.

4

1  Zarranz. Id., ¶¶ 7–8.  By letter dated September 12, 2007, Mr. Tabor responded to Mr. Lee
2  explaining that "[d]ue to [Dr. Zarranz's] unreasonable additional demands for compensation" it
3  would be necessary for plaintiff to locate another expert.  Lee Reply Dec., Exh. G.
4        At that point, Mr. Tabor and Mr. Lee agreed to exchange expert witness identities on or
5  before October 9, 2007.  Lee Dec. ¶ 12.  On October 5, 2007 Mr. Lee mailed disclosure of
6  defendants' expert Dr. Herbert H. Dedo to Mr. Tabor.  Mr. Lee received plaintiff's designation of
7  expert Dr. Murray Grossan on either October 8 or 9, 2007.  Id., ¶ 13.  On October 15, 2007 Mr.
8  Tabor informed Mr. Lee that he was withdrawing Dr. Grossan and would find a new expert on
9  liability.  Id., 14; Lee Reply Dec., Exh. H.  The purported reason for the withdrawal of Dr. Grossan
10 was that Dr. Grossan was too aggressive in the formulation of his opinions for Mr. Tabor's liking.
11 Lee Reply Dec., ¶ 4.  Counsel agreed to extend the deadline for disclosure of expert identities and
12 reports to October 24, 2007.  Id., ¶ 14; Lee Reply Dec., Exh. H.  On that date, Mr. Lee delivered the
13 expert report of Dr. Dedo to Mr. Tabor, and in exchange, Mr. Tabor delivered the expert report of
14 plaintiff's new expert witness Dr. Harold Fenster.  Lee Dec., ¶¶ at 15–16.
15       As these facts reveal, plaintiff's counsel, having disclosed the identity of Dr. Zarranz and
16 provided to plaintiff's counsel his "preliminary report," later withdrew Dr. Zarranz—two years after
17 the filing of the complaint, over one year after his identity had been initially disclosed and just 120
18 days before trial is to begin.  Despite this late withdrawal, defense counsel agreed to allow plaintiff's
19 counsel to locate another expert, and Dr. Grossan was substituted for Dr. Zarranz.  Less than one
20 week later, plaintiff's counsel also withdrew Dr. Grossan, who was then substituted with Dr.
21 Fenster.  On October 24, 2007, when counsel agreed to exchange expert reports, plaintiff did not
22 provide any report from either Dr. Zarranz or Dr. Grossan, for the obvious reason that plaintiff had
23 previously and unambiguously withdrawn both experts.  Only the report of Dr. Fenster was
24 delivered on that date.
25       Under Rule 37(c)(1), because neither Dr. Zarranz nor Dr. Grossan have been properly
26 disclosed as expert witnesses under Rule 26(a), plaintiff cannot now rely on their statements to
27 oppose the present motion unless the failure to comply with Rule 26(a) was substantially justified or
28

5

harmless. The burden to show substantial justification or harmlessness lies with the party facing sanctions. Deckers, 259 F.3d at 1107. As defendants' motion to strike is unopposed, the court finds that plaintiff has not carried this burden. Accordingly, the court grants defendants' motion to strike the statements submitted by Dr. Zarranz and Dr. Grossan.

B.    Admissibility and Sufficiency of Dr. Fenster's Expert Opinion

Defendants argue that the expert report of Dr. Fenster is inadmissible under the Federal Rules of Evidence and the factors set forth in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). "Faced with a proffer of expert scientific testimony, . . . a trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) would assist the trier of fact to understand or determine a fact in issue." Daubert, 509 U.S. at 592; Fed. R. Evid. 104(a), 702. As gatekeeper, the trial judge must ensure that any scientific, technical, or specialized expert testimony is not only relevant but also reliable. Daubert, 509 U.S. at 589; Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999).

The written report requirement of Federal Rule of Civil Procedure 26(a)(2)(B) enhances the trial court's gatekeeper function by requiring the full disclosure of expert opinions prior to trial. Rule 26(a)(2)(B) states, "[t]he expert report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the [expert] witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; [and] the qualifications of the witness." Under Rule 26(a), an expert's report must be "detailed and complete" in order "to avoid the disclosure of 'sketchy and vague' expert information." Sierra Club v. Cedar Point Oil Co., Inc., 73 F.3d 546, 571 (5th Cir. 1996).

Dr. Fenster's brief, one-page medical report states, in relevant part,

> I am of the opinion, which I hold to a reasonable degree of medical certainty, that there was a deviation from the applicable standard of care in this case . . . when the surgeons involved in this thyroidectomy case damaged both vocal cords. It is a violation of the applicable standard of care to either directly injure the vocal cords or to injure nerves that control the vocal cords such that bilateral permanent paresis/paralysis of the vocal cords results. The reason for the above opinion is that the vocal

6

> cords and all nerves to them, including the right and left recurrent laryngeal nerves must be identified and protected intra-operatively.

Pl.'s Opp. Exh. J. Although Dr. Fenster's report is relevant because it speaks to specialized medical knowledge that will assist the trier of fact in determining whether the surgeons in this case met the standard of care when they performed plaintiff's surgery, it contains naked conclusions unsupported by specific facts. Although Dr. Fenster's report states in general terms that he reached these conclusions based on the records in this case as well as the representations of plaintiff's counsel, he cites to no specific evidence or statement of fact to support his conclusions. Far from being detailed and complete, this conclusory and unsupported statement does not meet the requirements of FRCP 26(a)(2)(B), nor does it provide a sufficient basis for the court to determine whether the opinion is reliable under Daubert. The court concludes that the expert report of Dr. Fenster has little evidentiary weight and is inadmissible. Because the exclusion of Dr. Fenster's report leaves plaintiff without any expert testimony necessary to establish a breach of the standard of care, defendants' motion for summary judgement on the claim of negligence is granted.

      The court notes that this action was filed over two years ago and plaintiff has had an adequate opportunity to develop admissible expert testimony. Moreover, defendants have been willing to accommodate plaintiff's repeated last minute requests to locate additional expert testimony, and plaintiff has now cycled through three different experts. "[F]airness does not require that a plaintiff, whose expert witness testimony has been found inadmissable under Daubert, be afforded a second chance to marshal other expert opinions and shore up his case before the court may consider a defendant's motion for summary judgment." Nelson v. Tennessee Gas Pipeline Co., 243 F.3d 244, 250 (6th Cir. 2001). "It is implausible to suggest, post-Daubert, that parties will initially present less than their best expert evidence in the expectation of a second chance should their first try fail." Weisgram v. Marley Co., 528 U.S. 440, 455 (2000). Here, plaintiff has had not one, not two, but three chances to locate an expert whose testimony would be sufficient to satisfy the Daubert standards. The court need not allow plaintiff a fourth chance to cure deficiencies in his expert testimony.

Even if the court were to find Dr. Fenster's report to be admissible, moreover, the report is insufficient to raise a genuine issue of material fact. Contrary to Dr. Fenster's conclusion, the record evidence confirms the opposite, namely that the VA surgeons met the standard of care by identifying and protecting the laryngeal recurrent nerves intra-operatively. The operation report prepared and signed by Dr. Li and Dr. Duh following plaintiff's surgery in 2003 describes the process of the surgery in detail. See Lee Dec., Exh. A, Expert Report of Dr. Dedo, Attachment 2, 307–308 (hereinafter "VA Medical Records"). The operation report states that the surgeons identified the recurrent laryngeal nerve on the right side and that it was kept intact. Id. Only after the nerve was identified and protected did the surgeons then remove the right thyroid. Id. A similar process was repeated on the left side. The operation report states, "[t]he recurrent laryngeal nerve on the left side was then looked for, identified on the left side and was noted to be somewhat adherent to the trachea just anterior to the trachea esophageal groove on that side. No further manipulation of the nerve was undertaken after it was identified." Id.

The deposition testimony of Dr. Michelle Li, the chief resident in surgery who assisted during the surgery confirms the evidence in the operation report. See Lee Dec., Exh. E. She testified that the recurrent laryngeal nerves were looked for and property ascertained. Id. at 19:20–20:13. Although Dr. Li did not recall who actually identified the recurrent laryngeal nerves, she testified that its identification would have been confirmed not only by the surgeon who actually located it but by the other members of the surgical team. Id. Moreover, Dr. Li testified that the operation report she helped to write was accurate and that she could not recall anything about the operation that would lead her to believe that "anything untoward" happened to the laryngeal nerves. Id. at 25:2–5, 33:24–35:11.

The report of defendants' expert witness Dr. Dedo adds further confirmation that there is no genuine issue of material fact as to whether the surgeons in this case breached the standard of care. Consistent with Dr. Fenster's opinion regarding the appropriate standard of care, Dr. Dedo states that the standard of care is to identify the right and left laryngeal recurrent nerves during surgery. Dr. Dedo testifies that the surgeons who performed the surgery met the standard of care, as

8

evidenced by the 2003 operation report and Dr. Li's deposition testimony. According to Dr. Dedo, scar tissue resulting from plaintiff's prior surgery, which included removal of cysts on the posterior right lobe of the thyroid and the inferior pole of the left thyroid lobe, made the 2003 surgery more difficult and markedly increased the risk of damage to the laryngeal recurrent nerves. This was not the result of medical malpractice, Dr. Dedo opines, but an unfortunate consequence of plaintiff's history and anatomy.

Plaintiff's reliance of the doctrine of res ipsa loquitor is unavailing. First, expert testimony is required to establish the elements of res ipsa loquitor because this is not a case in which a lay person would readily comprehend that the type of injury plaintiff has suffered does not ordinarily occur in the absence of negligence. Bardessono v. Michels, 3 Cal. 3d 780, 789–790 (1970). Second, even assuming that plaintiff has established an inference of negligence relying on the doctrine of res ipsa loquitor, defendants have rebutted the inference by showing that the standard of care was met and that damage to the nerves is an inherent risk in this type of surgery that may occur even in the absence of negligence. Frantz v. San Luis Med. Clinic, 81 Cal. App. 3d 34, 43 (1978).

## II.     Lack of Informed Consent

Failure to provide sufficient information to support informed consent is a valid claim under California law. "A physician violates his duty to his patient and subjects himself to liability if he withholds any facts which are necessary to form the basis of an intelligent consent by the patient to the proposed treatment." Berkey v. Anderson, 1 Cal. App. 3d 790, 803–804 (1969). Liability for failure to obtain informed consent may attach even if the medical treatment is performed in accordance with the standard of care. Id. When an action is based on the failure to disclose *risks* associated with the treatment or procedure, as distinguished from an action in which the physician failed to disclose the *nature* of the treatment or procedure, the appropriate theory is negligence as opposed to battery. Cobbs v. Grant, 8 Cal. 3d 229, 240–241 (1972).

The scope of a physician's duty to exercise due care in disclosing the risks of a medical procedure is governed by a two-part test. Betterton v. Leichtling, 101 Cal. App. 4th 749, 754

9

(2002). "First, a physician must disclose to the patient the potential of death, serious harm, and other complications associated with a proposed procedure. Expert testimony on the custom of the medical community is not necessary to establish this duty." Id. (internal quotations and citations omitted). "Second, beyond the foregoing minimal disclosure, a doctor must also reveal to his patient such additional information as a skilled practitioner of good standing would provide under similar circumstances. Therefore, expert testimony is relevant and admissible to determine the duty to disclose matters other than the risk of death or serious harm and significant potential complications." Id. at 754–755 (internal quotations and citations omitted). Under this two part test, "[w]hether to disclose a significant risk is not a matter reserved for expert opinion. Whether a particular risk exists, however, may be a matter beyond the knowledge of lay witnesses, and therefore appropriate for determination based on the testimony of experts." Id. at 756. For example in Betterton, the effect of plaintiff's aspirin use on the risk of increased bleeding following surgery for a hernia was a subject beyond the general knowledge of lay people, and "[t]herefore, the jury should have relied only on expert testimony when it determined whether the use of aspirin causes significant risks in surgery." Id.; see also, Jambazian v. Borden, 25 Cal. App. 4th 836, 848–849 (whether plaintiff suffered from diabetic condition and whether such condition posed risks in surgery that were not disclosed were questions subject to proof only through experts).

Here, plaintiff's theory of lack of informed consent sounds in negligence, not battery. Mr. Jackson argues that although he understood and consented to the total thyroidectomy, he was not apprised of the risks and complications necessary for making an informed decision. Lee Reply Dec., Exh. H, Jackson Dep., 65:2–4, 66:14–18, 67:2–13. In particular, Mr. Jackson testified that he was not informed of the risks of vocal cord paralysis that could lead to a permanent tracheotomy, and had he been informed of such risks, he would not have consented to the surgery. Id. at 120:13–20, 69:13–70:9. Defendants point to evidence showing that both Dr. Duh and Dr. Li discussed with plaintiff the risks of vocal cord and nerve damage which may lead to a permanent tracheotomy. Duh Dep. 13:5–21; Li Dep. 25:20–26:2. Both surgeons also made contemporaneous notes on the day of the surgery documenting that risks including bleeding, infection and hoarseness due to vocal cord

10

paralysis were discussed with the plaintiff.  VA Medical Records at 204.

Even if material issues of fact remain as to what the surgeons did and did not disclose, plaintiff cannot overcome a motion for summary judgment because just as plaintiff has not offered expert testimony on the standard of care for his negligence claim, plaintiff has not offered expert testimony on the scope of the surgeons' duty to disclose.  Like the plaintiffs in Betterton and Jambazian, plaintiff in this case must rely on expert testimony since whether risks of nerve damage and vocal cord paralysis existed is beyond the knowledge of lay witnesses.  Moreover, the existence of an increased risk of nerve damage as a result of plaintiff's life long thyroid complications necessitating radiation, surgery and biopsy is also beyond the knowledge of lay witnesses.  The scope the surgeons' duty to disclose, therefore, must be determined through expert testimony.  As already discussed above, plaintiff has not put forth any admissible expert testimony, and the court need not give plaintiff another opportunity to cure this deficiency.  Accordingly, the court grants defendants' motion for summary judgment on the claim of lack of informed consent.

CONCLUSION

Defendants' motion to strike is GRANTED.  Defendants' motion for summary judgment on the claim for negligence in performing the surgery is GRANTED.  Defendants' motion for summary judgment on the claim of lack of informed consent is GRANTED.

IT IS SO ORDERED.


Dated: December 19, 2007

MARILYN HALL PATEL
United States District Court Judge
Northern District of California